J-A13033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DAVID CARL IMHOFF, | : | |
| | : | |
| | : | |
| Appellant | : | No. 1597 WDA 2014 |

Appeal from the Judgment of Sentence September 5, 2014
in the Court of Common Pleas of Washington County,
Criminal Division, No(s):  CP-63-CR-0000281-2013;
CP-63-CR-0001497-2013

BEFORE:  OLSON, STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED JUNE 30, 2016**

David Carl Imhoff ("Imhoff") appeals from the judgment of sentence imposed after a jury found him guilty of two counts of simple assault, and one count each of aggravated assault, recklessly endangering another person ("REAP"), unlawful restraint – serious bodily injury, terroristic threats, and persons not to possess firearms.[1]  We affirm.

The trial court thoroughly set forth the relevant factual and procedural history in its Opinion, which we incorporate herein by reference.  **See** Trial Court Opinion, 7/16/15, at 1-13.

On appeal, Imhoff presents the following issues for our review:

1.  Whether the trial court erred in denying the Motion to suppress?

---

[1]  **See** 18 Pa.C.S.A. §§ 2701(a)(1), 2702(a)(4), 2705, 2902(a)(1), 2706(a)(1), 6105(a)(1).

2.   Whether the trial court erred in denying the Motion to dismiss pursuant to Pa.R.Crim.P. 600?

3.   Whether the trial court erred in admitting Commonwealth's Exhibits 1, 2, and 3?

4.   Whether the trial court erred in instructing the jury on consciousness of guilt?

5.   Whether the trial court erred in not instructing the jury on self-defense?

6.   Whether the evidence presented by the Commonwealth was insufficient to support each of [Imhoff's] convictions?

7.   Whether the trial court erred in denying [Imhoff's] Motion to dismiss after [the] close of the Commonwealth's case?

8.   Whether the jury's verdict was against the weight of the evidence?

9.   Whether the trial court erred in denying [Imhoff's] Motion for a mistrial?

10.  Whether the trial court erred in granting the Commonwealth's Motion for leave to amend information[,] on May 12, 2014[,] at Case No. CP-63-0001497-2013?

11.  Whether the trial court erred in denying [Imhoff's] Post-verdict Motion?

Brief for Appellant at 7 (issues renumbered for clarity, some capitalization omitted).[2]

Imhoff first argues that the trial court erred by denying his Motion to suppress the handgun that police discovered hidden inside of Imhoff's

---

[2] We observe, with disapproval, that the Commonwealth neither filed a brief on appeal nor appeared at oral argument on this case.

residence (hereinafter "the trailer") following his arrest, as the warrantless search was unconstitutional.  ***See id.*** at 20-22.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.  Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.  Thus, the conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. Perel***, 107 A.3d 185, 188 (Pa. Super. 2014) (citation and ellipses omitted).

Imhoff points out that the victim, Brenda Worstell ("Worstell"), (1) discovered the handgun that Imhoff used in the April 26, 2013 assault when she re-entered the trailer two days after the assault; and (2) then called the police and consented to them searching the trailer, claiming that it was her residence.  Brief for Appellant at 20.  Imhoff contends that the suppression court erred in ruling that the police were legally authorized to conduct a warrantless search of the trailer pursuant to the consent exception to the warrant requirement – based upon Worstell's "apparent authority" to consent.  ***Id.***

The Fourth Amendment protects the people from unreasonable searches and seizures. *In the Interest of D.M.*, 566 Pa. 445, 781 A.2d 1161, 1163 (Pa. 2001). A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment, subject to a few specifically established, well-delineated exceptions. *Horton v. California*, 496 U.S. 128, 134 n.4, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990) (citations omitted). One such exception is a consensual search, which a third party can provide to police, [*Commonwealth v.*] *Hughes*, [836 A.2d 893,] 900 [(Pa. 2003)], known as the apparent authority exception.

A third party with apparent authority over the area to be searched may provide police with consent to search. *United States v. Matlock*, 415 U.S. 164, 171, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974). Third party consent is valid when police reasonably believe a third party has authority to consent. *Illinois v. Rodriguez*, 497 U.S. 177, 188-89, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990). Specifically, the apparent authority exception turns on whether the facts available to police at the moment would lead a person of reasonable caution to believe the consenting third party had authority over the premises. *Id.* (citations omitted). If the person asserting authority to consent did not have such authority, that mistake is constitutionally excusable if police reasonably believed the consenter had such authority and police acted "on facts leading sensibly to their conclusions of probability." *Id.*, at 186 (quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)).

*Commonwealth v. Strader*, 931 A.2d 630, 634 (Pa. 2007).

In the instant case, Imhoff argues that

Worstell's authority to consent to a search of the [trailer] was, at best, ambiguous[,] requiring the [police] to make further inquiries into [] Worstell's status as to her ability to consent. Where a situation is ambiguous, or where a reasonable person would "question the consenting party's actual authority or if the consenting party's assertions of authority appear unreasonable, a police officer should make further inquiries to determine the status of the consenting party."

Brief for Appellant at 20-21 (quoting **Perel**, 107 A.3d at 192). Imhoff maintains that the police improperly "made no further inquiries as to [] Worstell's authority to consent to a search beyond her assertions that she lived at the [trailer]." Brief for Appellant at 21.

In its Pa.R.A.P. 1925(a) Opinion, the trial court addressed Imhoff's claim, and correctly determined that the warrantless search was legal under the apparent authority doctrine. **See** Trial Court Opinion, 7/16/15, at 18-20; **see also id.** at 14-17 (opining that Worstell had actual authority to consent to the search). We conclude that the trial court did not err in denying Imhoff's Motion to suppress, and affirm based on the trial court's Opinion as to Imhoff's first issue. **See id.**

Next, Imhoff contends that the trial court erred by denying his Motion to dismiss, asserting that the Commonwealth violated his speedy trial rights under Pa.R.Crim.P. 600. **See** Brief for Appellant at 22-23.

We review such claims according to the following principles:

In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion.

. . .

The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the

protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

**Commonwealth v. Thompson**, 93 A.3d 478, 486-87 (Pa. Super. 2014)

(citations, brackets and ellipses omitted).

In its Opinion, the trial court summarized and addressed Imhoff's claims concerning his Rule 600 challenge, set forth the relevant law, and determined that the Commonwealth had exercised due diligence in bringing Imhoff's case to trial. **See** Trial Court Opinion, 7/16/15, at 20-24. We affirm based on the trial court's sound rationale with regard to this issue. **See id.**

In his third issue, Imhoff argues that the trial court erred and caused him undue prejudice by admitting into evidence three photographs (collectively referred to as "the brace photographs") of Worstell's head and neck area, taken shortly after the April 26, 2013 assault,[3] each of which showed her in a neck brace. Brief for Appellant at 23-24.

> The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. Evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E.

---

[3] The brace photographs were taken at the Canonsburg Hospital Emergency Room. N.T., 6/10-12/14, at 135.

> 401. But, "[a]lthough relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403. A determination of whether photographic evidence alleged to be inflammatory is admissible involves a two-step analysis. First, the court must decide whether a photograph is inflammatory by its very nature. If the photograph is deemed inflammatory, the court must determine whether the essential evidentiary value of the photograph outweighs the likelihood that the photograph will improperly inflame the minds and passions of the jury.

*Commonwealth v. Sanchez*, 36 A.3d 24, 48-49 (Pa. 2011) (citations to case law and quotation marks omitted). "[I]nflammatory [] mean[s] the photo is so gruesome it would tend to cloud the jury's objective assessment of the guilt or innocence of the defendant." *Commonwealth v. Funk*, 29 A.3d 28, 33 (Pa. Super. 2011) (*en banc*).

Here, Imhoff contends that the brace photographs "are clearly inflammatory to the jury[,] as they show extensive detail of injuries sustained by [] Worstell, as well as [showing] Worstell in a neck brace, insinuating that she may have sustained a severe neck or back injury, which she, fortunately, did not." Brief for Appellant at 23-24; *see also id.* at 24 (asserting that the brace photographs "could likely have inflamed [the jury's] passions, leading them to believe that the injuries sustained were far more serious than they actually were.").

Upon review, we discern no abuse of the trial court's discretion in ruling that the brace photographs "were not so inflammatory that the prejudice would outweigh their probative value." Trial Court Opinion,

7/16/15, at 26. Our review confirms that the brace photographs were not inflammatory by their very nature. **See Sanchez**, **supra**. We cannot conclude that an objective juror would deem the brace photographs to be gruesome, as they merely depict Worstell's face and neck area, with an orange medical brace on her neck. Worstell's visible injuries, shown in the brace photographs, were not severe or graphically bloody; rather, they comprised merely redness and swelling. **See Funk**, **supra**. Moreover, though we acknowledge Imhoff's contention that the brace photographs may have given the jury the impression that Worstell sustained more severe injury than she actually suffered, the photographs were a fair and accurate depiction of her physical condition after the violent assault. Accordingly, Imhoff's third issue does not entitle him to relief.

In his fourth issue, Imhoff contends that the trial court erred by instructing the jury on consciousness of guilt. Brief for Appellant at 24-25. According to Imhoff, "there is no evidence from which a reasonable jury could conclude that [Imhoff] attempted to conceal himself in [the trailer] in order to evade capture from the police[.]" **Id.** at 24. Imhoff states that although he "did not immediately inform the Officers he was inside the trailer when they made contact with him" via phone, he failed to do so because he wanted additional time to "contact family to inform them of the situation[.]" **Id.** at 25. Moreover, Imhoff points out the testimony of one of the responding police officers that the officers could hear noises coming from

the inside of the trailer, which, according to Imhoff, "indicat[es] that [Imhoff] in no way was attempting to conceal his presence within the [trailer]." **Id.**

Our standard of review concerning a challenge to a jury charge requires us to determine

> whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. In so doing, we must view the charge as a whole, recognizing that the trial court is free to use its own form of expression in creating the charge. [Our] key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations. It is well-settled that the trial court has wide discretion in fashioning jury instructions.

**Commonwealth v. Scott**, 73 A.3d 599, 602 (Pa. Super. 2013) (citations and quotation marks omitted).

In its Opinion, the trial court addressed Imhoff's claim, set forth the challenged consciousness of guilt instruction and relevant law, and determined that the instruction was proper under the circumstances, particularly in light of Imhoff's admission that he had lied to the police concerning his whereabouts. **See** Trial Court Opinion, 7/16/15, at 30-32. We affirm based on the trial court's rationale with regard to this issue. **See id.**

In his fifth issue, Imhoff contends that the trial court erred by failing to give a jury instruction on self-defense.[4] Brief for Appellant at 25-26. In claiming that "a jury could have reasonably found that he was acting in self-defense[,]" Imhoff argues as follows, citing his own trial testimony:

[] Worstell provoked the incident by beginning to "freak out" at [Imhoff] while sitting on his couch, demanding heroin. She then began punching [Imhoff] rapidly in the face while he attempted to calm her down, causing his mouth to bleed[. This] demonstrate[es] that [Imhoff] was in fear of bodily injury.

*Id.* at 26.

"Before the issue of self-defense may be submitted to a jury for consideration, a valid claim of self-defense must be made out as a matter of law, and this determination must be made by the trial judge." ***Commonwealth v. Chine***, 40 A.3d 1239, 1244 (Pa. Super. 2012) (citations omitted); ***see also*** 18 Pa.C.S.A. § 505(a) (setting forth the three statutory elements required to establish self-defense). "[A] trial court should not instruct the jury on legal principles which have no application to the facts presented at trial." ***Commonwealth v. Kendricks***, 30 A.3d 499, 507 (Pa. Super. 2011); ***see also Scott***, 73 A.3d at 602 (stating that "[t]he trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.") (citation omitted).

---

[4] Imhoff's counsel requested the trial court to issue a self-defense instruction at trial, prior to the jury charge, which the court rejected. ***See*** N.T., 6/10-12/14, at 235-36.

In its Opinion, the trial court addressed Imhoff's claim and determined that no instruction on self-defense was warranted, as there was no evidence that Imhoff had acted in self-defense. *See* Trial Court Opinion, 7/16/15, at 32-33. We affirm based on the trial court's rationale with regard to this issue. *See id.*

In Imhoff's sixth and seventh issues, which we will address together, he argues that the evidence was insufficient to sustain each of his convictions, and the trial court thus erred in denying his Motion for judgment of acquittal made at the close of the Commonwealth's case. *See* Brief for Appellant at 16-17, 26-32. Imhoff summarizes his sufficiency challenges as follows:

> In regards to aggravated assault under 18 Pa.C.S.A. § 2702(a)(4), the Commonwealth failed to prove that [Imhoff] possessed the intent to cause serious bodily injury, or that [] Worstell sustained serious bodily injury as a result of the incident. Similarly[,] in regards to simple assault in violation of 18 Pa.C.S.A. § 2701(a)(1), the Commonwealth has not proved the necessary intent to sustain the charge[,] and [] this intent could not exist due to the mutual nature of the confrontation. For the charges of [REAP] in violation of 18 Pa.C.S.A. § 2705, and unlawful restraint in violation of 18 Pa.C.S.A. § 2902(a)(1)[,] the Commonwealth has failed to show that [] Worstell was in actual danger of serious bodily injury. The Commonwealth has further failed to show an intent to terrorize [] Worstell with comments made by [Imhoff] to sustain the charge of terroristic threats under 18 Pa.C.S.A. § 2706, and failed to show [that Imhoff] possessed a firearm when prohibited to do so to sustain the possession of a firearm prohibited charge under 18 Pa.C.S.A. § 6105(a)(1).

*Id.* at 16-17 (some capitalization omitted); *see also id.* at 27 (asserting that Imhoff "ended the altercation and openly displayed sympathy and

remorse for what had occurred. Further, [] Worstell suffered only bruising and scratches as a result of the incident ….").

In its Opinion, the trial court set forth the standards of review and relevant law, addressed Imhoff's sufficiency claim and challenge to the denial of his Motion for judgment of acquittal, and determined that the issues lack merit. *See* Trial Court Opinion, 7/16/15, at 26-30; *see also id.* at 25-26 (addressing the conviction of aggravated assault). We affirm based on the trial court's rationale with regard to these two issues. *See id.* at 25-30.

In his eighth issue, Imhoff contends that his convictions were against the weight of the evidence. Brief for Appellant at 32-33. Imhoff advances scant substantive argument in support of this claim, aside from his assertion that "it is clear that the Commonwealth only produced tenuous, vague, and uncertain evidence that would shock a reasonable sense of justice." *Id.* at 33.

In its Opinion, the trial court set forth the standard of review and relevant law, addressed Imhoff's challenge to the weight of the evidence, and determined that the claim is waived, and, in any event, lacks merit. *See* Trial Court Opinion, 7/16/15, at 33-35. We agree with the trial court's rationale and determination, and affirm on this basis as to this issue. *See id.*

In his ninth issue, Imhoff argues that the trial court erred by denying his Motion for a mistrial. Brief for Appellant at 33-34. Specifically, Imhoff contends that the Commonwealth committed a discovery violation by failing to provide the defense with Commonwealth Exhibits 6, 7, and 8 (three photographs that the police had taken of Worstell's injuries after she had been released from the hospital). *Id.* According to Imhoff, this failure to disclose the photographs prejudiced him and impacted the defense's trial strategy and presentation of its case. *Id.* at 34. However, Imhoff concedes that his defense counsel stated at trial that these photographs would not have affected her trial strategy had they been disclosed. *Id.*

In its Opinion, the trial court set forth the relevant law, addressed Imhoff's claim, and determined that the court properly denied the Motion for a mistrial, as Imhoff suffered no prejudice by any alleged discovery violation. *See* Trial Court Opinion, 7/16/15, at 35-39. We agree with the trial court's rationale and determination, and affirm on this basis as to Imhoff's ninth issue. *See id.*

In his tenth issue, Imhoff asserts that the trial court erred by granting the Commonwealth's Motion for leave to amend the criminal information, permitting the Commonwealth to amend the grading of the aggravated assault charge against Imhoff from a second-degree felony (*see* 18 Pa.C.S.A. § 2702(a)(4)) to a first-degree felony (*see id.* § 2702(a)(1)). Brief for Appellant at 34-35. According to Imhoff,

the allowance of the amendment by the trial court was in error, as the amendment added new charges and prejudiced [Imhoff] in the preparation of his case. [Imhoff] had already been preparing his defense on this matter for over a year at the time that the affidavit [of probable cause] and complaint were amended. Further, … for over a year[,] the Commonwealth was aware that they were in possession of the firearm allegedly used in the assault, yet the fact of this was not disclosed until a month before the trial began[,] when the charges were amended. … Further, [Imhoff] chose to waive his preliminary hearing, a decision that may have been made differently had this evidence been known at the time.

*Id.* at 35 (some capitalization omitted).

In its Opinion, the trial court set forth the relevant law, addressed Imhoff's claim, and determined that it does not entitle him to relief. **See** Trial Court Opinion, 7/16/15, at 40-43. We agree with the trial court's rationale and determination, and affirm on this basis as to Imhoff's tenth issue. **See id.**

In his eleventh and final issue, Imhoff baldly argues that the trial court erred by denying his post-trial Motions. Brief for Appellant at 36.

In its Opinion, the trial court summarized the claims raised in Imhoff's counseled and *pro se* post-trial Motions, and determined that the court properly denied all of the Motions (which raised several of the issues that we have discussed above). **See** Trial Court Opinion, 7/16/15, at 39-40. We agree with the trial court's rationale and determination, and affirm on this basis as to Imhoff's final issue. **See id.**

Judgment of sentence affirmed.

J-A13033-16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/30/2016

- 15 -



IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF )
PENNSYLVANIA )
)
)
)
vs. )          No. 281-2013
)          1497-2013
DAVID CARL IMHOFF, )
)
Defendant. )

## OPINION OF COURT

This matter comes before the Court upon Defendant's direct appeal from the Judgment of

Sentence dated September 5, 2014, following his conviction, after a trial by jury on June 12,

2014, on the charges of Possession of Firearm Prohibited, Terroristic Threats with Intent to

Terrorize Another, Aggravated Assault with a finding of Serious Bodily Injury, 2 counts of

Simple Assault, Recklessly Endangering Another Person, and Unlawful Restraint. The

Defendant was found not guilty on the charge of Aggravated Assault with a deadly weapon.

### Procedural History

A jury was selected on the above matter on June 9, 2014, with the Honorable John F.

DiSalle, Judge, presiding. Trial commenced on June 10, 2014, and continued through June 12,

2014. At trial, Defendant, David Carl Imhoff, (hereinafter referred to as "Defendant") was

represented by court appointed conflict counsel of Washington County, Molly Maguire Gaussa,

Esquire[1], and the Commonwealth was represented by Assistant District Attorney, Kristen

Clingerman, Esquire.

---

[1] Previous counsel, John Puskar, Esquire, withdrew as counsel pursuant a motion on November 1, 2013.

1



After the close of evidence and closing arguments, and following deliberations, the jury found the Defendant guilty on June 12, 2014, at No. 1497-2013 of the charges of Possession of Firearm Prohibited[2], Terroristic Threats with Intent to Terrorize Another[3], Unlawful Restraint with Serious Bodily Injury[4] Simple Assault[5], Recklessly Endangering Another Person[6], Aggravated Assault[7]. The Defendant was found not guilty on the charge of Aggravated Assault with a deadly weapon.[8] At No. 218-2013 the Defendant was found guilty of Simple Assault.[9]

The Court ordered that a Pre-Sentence Investigation be completed, and following the Pre-Sentence Investigation, the Trial Court held a sentencing hearing on September 5, 2014. Thereafter, the Trial Court sentenced the Defendant as follows:

1. At No. 1497-2013, on the charge of Aggravated Assault, a felony of the first degree, and the jury having found serious bodily injury was inflicted, the Trial Court sentenced the Defendant to pay the costs of prosecution and be confined in an appropriate state correctional institution for no less than seven and one-half (7 ½) years to no more than fifteen (15) years.

2. On the charge of Possession of Firearm Prohibited, a felony of the second degree, the Trial Court sentenced the Defendant to be confined in an appropriate state correctional institution for a period no less than five (5) years to no more than ten (10) years, to run consecutively to the sentence for Aggravated Assault and under the same terms and conditions.

---

[2] 18 Pa.C.S. § 6105(a)(1).
[3] 18 Pa.C.S. § 2706(a)(1).
[4] 18 Pa.C.S. § 2902(a)(1).
[5] 18 Pa.C.S. § 2701(a)(1).
[6] 18 Pa.C.S. § 2705.
[7] 18 Pa.C.S. § 2702.
[8] 18 Pa.C.S. § 2702(a)(4).
[9] 18 Pa.C.S. § 2702(a)(1).

3. On the charge of Terroristic Threats, a misdemeanor of the first degree, and the Defendant having used a firearm during the commission of the offense, the Trial Court sentenced the Defendant to be confined to an appropriate state correctional institution for no less than one and one-half (1 ½) to no more than three (3) years, to run consecutively to the above sentences and under the same terms and conditions.

4. On the charge of Unlawful Restraint, a misdemeanor of the first degree, and the Defendant having used a deadly weapon in the commission of the offense, the Trial Court sentenced the Defendant to be confined for a period of no less than one and one-half (1 ½) years to no more than three (3) years in an appropriate state correctional institution, to run concurrently to the above sentences and under the same terms and conditions.

5. On the charge of Simple Assault, a misdemeanor of the second degree, no further sentence was imposed, as that sentence merged with the sentence for Aggravated Assault.

6. On the charge of Recklessly Endangering Another Person, a misdemeanor of the second degree, no further sentence was imposed as that sentence merged with the sentences for other charges.

7. At No. 281-2013, on the charge of Simple Assault, a misdemeanor of the second degree, the Trial Court sentenced the Defendant to pay the costs of prosecution and be confined for a period of no less than one (1) year to no more than two (2) years in an appropriate state correctional institution, to run consecutively to the sentences at No. 1497-2013, and under the same terms and conditions.

3

The Defendant was further ordered to be treated for drug and alcohol issues and be assessed for mental health issues. Also, Defendant was ordered to have no contact with the victim, Brenda Worstell, or any of her family members, either directly or indirectly by any means of communication.

The Defendant's total sentence was no less than fifteen (15) years to no more than thirty (30) years in an appropriate state correctional institution.

The Defendant filed a Notice of Appeal to the Superior Court of Pennsylvania on September 22, 2014. Pursuant a motion, on December 16, 2014, Attorney Gaussa was permitted to withdraw as counsel and the Trial Court appointed Stephen Paul, Esquire, as counsel for the Defendant.

Thereafter, on December 17, 2014, the Court Ordered the Defendant to file a Concise Statement of Matters Complained of on Appeal Pa.R.A.P. 1925(b) within twenty-one (21) days.[10] Pursuant to a motion by Defense counsel on December 31, 2014, the Defendant was granted an additional twenty-one days (21) days after the filing of the transcripts to file a Concise Statement of Matters Complained of on Appeal.[11] The Defendant filed his Concise Statement of Issues on Appeal Pa.R.A.P. 1925(b) on February 17, 2015. Subsequently, Defendant filed an Amended Concise Statement of Issues on Appeal 1925(b) on May 13, 2015, within which he raised the following eleven issues:

1. "The Trial Court erred in denying the Motion to Suppress.

2. The Trial Court erred in denying the Motion to Dismiss pursuant to Pa.R.Crim.P. 600.

3. The Trial Court erred in admitting Commonwealth's Exhibit 1, 2, and 3.

---

[10] Pa.R.A.P. 1925(b)(2) states, in relevant part: *Time for filing and service.*—The judge shall allow the appellant at least 21 days from the date of the order's entry on the docket for the filing and service of the Statement.
[11] Pa.R.A.P. 1925(b)(2) states in part: Upon application of the appellant and for good cause shown, the judge may enlarge the time period initially specified …

4. The Trial Court erred in denying Defendant's Motion to Dismiss after close of the Commonwealth's case.

5. The evidence presented by the Commonwealth was insufficient to support each of the Defendant's convictions.

6. The Trial Court erred in not instructing the jury on self-defense.

7. The Trial Court erred in instructing the jury on consciousness of guilt.

8. The jury's verdict was against the weight of evidence.

9. The Trial Court erred in denying the Defendant's Motion for Mistrial.

10. The Trial Court erred in denying the Defendant's Post Verdict Motion.

11. The Trial Court erred in granting the Commonwealth's Motion for Leave to Amend Information on May 12, 2014, at case no. 1497."

## Factual History

During trial, the jury heard evidence that on December 22, 2012, and April 24, 2013, Brenda Worstell (hereinafter referred to as "Victim") was physically abused and assaulted by her ex-husband David Carl Imhoff (hereinafter referred to as the "Defendant").[12]

Testimony demonstrated that the Defendant and the Victim met in August 2008 when they began dating. Victim testified that the Defendant was a heroin dealer and from their first date onward they abused heroin together. Victim indicated that she and her daughter moved in with the Defendant and his grandmother in September of 2008. Thereafter, the Victim and Defendant were married on July 28, 2009.[13]

---

[12] TT 18. (The numerals following the initials TT refer to the official transcript of the jury trial proceedings conducted from June 10, 2014, through June 12, 2014.)
[13] TT 18-23.

Victim testified that the Defendant became very controlling a few months into their relationship. She testified that the Defendant would control their money and would prohibit her from talking to anyone, including her parents. Victim indicated she was not permitted to go to her parents' home to pick up her daughter. Defendant forced Victim's parents to drop off Victim's daughter at the Hickory One Stop where Defendant would accompany Victim to drop off and pick up Victim's daughter. Victim indicated that her drug addiction became very serious and she was using heroin a few times a day, causing her to drop out of school and restricting her ability to work.[14]

Additionally, Victim testified that the Defendant verbally abused her. She recollected that the mental abuse escalated to physical abuse in November 2008, when the Defendant pushed her down in front of her daughter. Following that incident, Victim testified that the Defendant would physically abuse her any time he became angry. Victim indicated that the Defendant would punch and hit her in places that were not visible to others, for instance, in the back of the head or in the ribs. Victim also revealed during her testimony that on more than one occasion the Defendant tackled her to the ground.[15]

Thereafter, on or about March 1, 2010, Victim recalled that the Defendant sent the Victim and a friend of Defendant's to pick up heroin. The Defendant became enraged when the Victim was taking too long to return and would not answer her phone. Upon Victim's arrival home, Defendant began screaming at Victim. Victim testified that at some point she talked back to Defendant. In response, Defendant got out of the chair and walked over to the couch where she was sitting, and punched Victim in her mouth with a closed fist. Victim then attempted to

---

[14] TT 23-24.
[15] TT 24-25.

leave, but the Defendant tackled her onto the couch and held her down. Victim testified she kicked Defendant until she was able to free herself.[16]

Victim testified that she ran upstairs to the Defendant's grandmother and asked her to call 9-1-1. During that time, Victim recalled her mouth was profusely bleeding. Victim testified that the Defendant's grandmother refused to call the police. Victim indicated that she was able to grab the phone from his grandmother and call 9-1-1. Victim testified that as soon as the 9-1-1 operator picked up, Defendant punched her in the face and grabbed her by the hair and started dragging her back down the steps. Victim testified that as he was dragging her down the steps, her leg became trapped in the railing. Victim stated that Defendant continued to pull her down the steps, but she was able to wedge herself in the railing. At that point, he pulled her by her hair and hit her head off of the stairwell. Victim stated that the back of her head was split open and required seven staples to repair the injury.[17]

The Cecil Police Department responded to the incident. Victim testified that she barricaded herself in a bedroom upstairs by pushing the dresser in front of the door. Defendant locked himself in the basement. Cecil police broke the basement door down and arrested the Defendant. Victim went outside to the ambulance where she received care for her head, facial cuts and jaw. Victim testified that following her care at the hospital, she returned to the home of the Defendant. Officer Cathleen Campsey of the Cecil Township Police Department testified criminal charges were filed against the Defendant that day. However, the charges were later dropped because the Victim did not wish to pursue the charges.[18]

Victim testified that she decided to divorce the Defendant in July 2011. However, Victim decided to rekindle her relationship with the Defendant in January 2012. Victim testified that she

---

[16] TT 25-28.
[17] TT 28-29.
[18] TT 29-31.

7

relapsed and became addicted to heroin again. Thereafter, on December 22, 2012, police were called for another incident.

Victim testified that she and the Defendant began to argue after he discovered that she was fired from her job at the Hickory One Stop and she would not provide him with her prescribed anxiety medication, Klonopin. The Victim, who was wearing a hooded sweatshirt at the time, testified she attempted to walk out the door and leave when the Defendant grabbed the Victim by the hood of her sweatshirt and yanked her back in the door. Victim stated that the Defendant then threw her down on the bed and threatened her. Victim recalled that she walked out of the room and proceeded to get into her car, but as she was backing out of the driveway, Victim noticed the Defendant waived for her to come back. Victim indicated she wanted to hear what he had to say, so she returned, but left her doors locked. Victim rolled the window down and the Defendant reached in the window, unlocked the door, and got into the car.[19]

Victim's testimony demonstrated that she and the Defendant began arguing again and the Defendant grabbed the Victim by her throat with his right hand. Victim stated she was able to open the car door and get out. As she fell from the car, the Defendant's nails scratched Victim across her throat and over to her right shoulder. Victim proceeded to call 9-1-1. During that time, Defendant's friend pulled into the driveway, and Defendant got into his friend's car and left. Victim followed the Defendant and his friend until they pulled into another friend's driveway. At that point, the police arrived.[20]

Defendant elected to take the witness stand, and testified that he and the Victim became involved in a verbal argument and he told her to leave his house. Defendant testified he told the Victim that "maybe you should just go find somebody else", then she replied, "maybe I already

---

[19] TT 31-34.
[20] TT 34-36.

8

have." Defendant testified that he followed Victim out to her car and started asking her what she meant by that comment. Defendant testified that Victim became angry and floored the car in reverse. Defendant stated that the side mirror of the car hit him and threw him into the car next to him. Defendant testified Victim then put the car in drive and floored it toward him, but she did not hit him. Defendant testified he then entered her car and she became irate. Defendant testified he grabbed Victim by her jacket in order to settle her down. However, when she would not calm down, Defendant indicated he got out of the Victim's car and got into his friend's car. Defendant testified that the Victim was blocking them in and she began ramming her car into the friend's car with them inside. Defendant indicated that they were somehow able to get out of the driveway and leave.[21]

Officer Joshua Withers of the Houston Borough Police Department and Officer Donald Cross of the Canonsburg Police Department responded to the altercation. Officer Withers and Officer Cross testified that they observed red marks and scratches on Victim's neck. Thereafter, based on his observations, Officer Withers filed Simple Assault and Harassment charges against the Defendant.[22]

Despite this altercation, Victim resumed her relationship with the Defendant approximately three days following the incident. Thereafter, Victim testified that the Defendant and Victim moved into a trailer together. Victim testified that despite their reconciliation, the physical abuse continued. However, Victim stated she did not call the police on every occasion abuse occurred.[23]

Thereafter, on or about April 23, 2013, the Victim testified that the Defendant sent her to sell heroin for him. However, there was a mishap with the sale. An argument subsequently

---

[21] TT 199-205.
[22] TT 36-38; 166-169; 174.
[23] TT 38-40.

9

ensued between the couple. Victim left the trailer and went to stay at her parents' home. Victim communicated to the Defendant that she was going to attend a methadone clinic, in aspiration of curing her addiction problem. Testimony demonstrated that Defendant asked Victim to come to the trailer to talk before she went to the clinic. Victim returned to the trailer at Defendant's request.[24]

Victim testified that when she entered the trailer the Defendant was sitting on the couch with a handgun lying beside him. The couple subsequently began to argue. The argument escalated and the Defendant picked up the gun and pointed it at the Victim's chest. Victim testified she knocked articles off of a coffee table she was standing next to and attempted run for the door. However, before Victim could reach the door, Defendant grabbed the Victim and threw her to the ground. Victim testified that the Defendant sat on top of her and pinned her arms down with his legs. Victim testified that the Defendant began to choke Victim. Defendant started explaining to Victim what he was going to tell the police after he killed her. Victim recalled that Defendant said he was going to tell the police he had to kill her in self-defense. Thereafter, Victim lost consciousness. Victim regained consciousness, but the Defendant was still sitting on top of her. Victim indicated that she went in and out of consciousness four times. On the fourth time Victim lost consciousness, Victim testified that she urinated in her pants.[25]

After Victim came back to consciousness, she recalled that Defendant was pointing the gun in her face and shoving the barrel of the gun in her mouth. Victim also recalled that Defendant repeated "I should just blow your brains out right now." Victim stated that she somehow escaped the Defendant's grasp, but the Defendant grabbed her and punched her in the face with a closed fist three times. Victim testified that one punch hit her in the left temple and

---

[24] TT 40-43.
[25] TT 43-46.

another below her left eye. Victim indicated that her eye instantly swelled up and began to bleed. The Defendant pinned Victim down again and continued screaming at her. Victim testified she attempted to yell for "help", but Defendant put his hand over her mouth. At that point, Defendant began to force Victim to put her hand on the gun. Defendant told Victim he wanted her fingerprints on the gun and force her to fire gunshots, so she would have gunshot residue on her hands.[26]

Victim further testified that suddenly the Defendant began crying and stopped the attack. Victim recalled that Defendant began begging her not to call the police for an hour until he could "eat all these pills and put a bullet in my brain." Victim testified the gun was lying next to the Defendant. Victim recalled that she was afraid to leave, so she sat on the floor and talked to the Defendant in an effort to calm him down. Victim noted that the Defendant just continued to sit on the floor and rock back and forth crying. Victim stated she then went into the kitchen and shot up a dose of heroin.[27]

Victim then determined that the Defendant was not paying attention, so she ran for the door and exited. Victim testified she got into her car and drove to the Hickory One Stop. She sat in the parking lot until a patron of the store pulled into a parking space next to her and realized the Victim was injured. Victim stated the woman helped her out of the car and allowed Victim to sit in her truck. At that time, the Victim called 9-1-1. During the phone call, the Defendant called the Victim on the other phone-line. The Defendant began accusing the Victim of stealing his gun. Victim stated that the police and an ambulance then came to her aid at the Hickory One Store.[28]

---

[26] TT 46-48.
[27] TT 48-49.
[28] TT 52-55.

11

Conversely, the Defendant testified that he told the Victim he wanted stop using heroin and they should stop together. However, the Victim showed up at the trailer on April 24, 2013, wanting to get high. Defendant indicated to Victim he was not going to abuse heroin anymore. Thereafter, an argument ensued. Defendant testified that Victim began demanding heroin and became irate. Defendant testified that Victim began punching him. Defendant admitted that he "smacked" Victim in the eye, but "started crying just as soon as I hit her." Defendant stated that Victim then shot up heroin and left the trailer. Defendant indicated the police then arrived at the trailer and arrested him.[29]

Officer Donald Cooper, a police officer with the Chartiers Township Police Department, testified that he and his partner, Sergeant Harton, received a call from 9-1-1 that an altercation had taken place at a trailer home. The call indicated that the female had been assaulted and had fled the scene. The call further indicated that a male, in possible possession of a handgun, assaulted the female and there was a concern about the male committing suicide.

After the information was received, Sergeant Harton and Officer Cooper traveled to the scene. Sergeant Steven Horvath arrived at the scene to meet the officers. Testimony demonstrated that Sergeant Harton was able to make contact with the Defendant via phone. Defendant indicated to the officers he was not present at the trailer. However, when the officers approached the trailer, they heard movement inside. Accordingly, the three officers surrounded the trailer and called for the Defendant to come out. Thereafter, about five to eight minutes later, the Defendant emerged from the trailer and was detained. Defendant repetitively stated to the officers, "I'll just go back to jail." Thereafter, the officers did a quick sweep of the trailer to look for the weapon; however, they could not locate the gun. The Defendant was taken into custody.[30]

---

[29] TT 209-219.
[30] TT 86-92.

12

The Victim was taken to Canonsburg Hospital. During her stay at the hospital, Sergeant Horvath took information from the Victim of the incident. The Victim later left Canonsburg Hospital and went to Weirton Hospital.[31]

Victim testified that she sustained several injuries including a swollen and black and blue left eye; cut above her left eye; cuts and marks on her cheek, nose and right arm; bloody nose; torn ligaments and tendons from her shoulder to her elbow and her throat was bruised and sore. The Victim was treated for her injuries at Weirton Hospital and was released the same day. The following day, Victim provided a written statement to the police.[32]

A few days after Victim left the hospital, she returned to the trailer where the incident took place in order to retrieve personal belongings. Victim testified that she had an idea where the Defendant hid his gun, which was used during the assault. Victim searched a heating duct for the gun. Victim discovered the gun was located at the bottom of the duct. Accordingly, she called Sergeant Horvath and Officer Cooper who were able to crawl underneath the trailer and retrieve the loaded .22 caliber Beretta handgun 21A 22LR.[33]

## OPINION

The Defendant first assigns error to the Trial Court for denying the Defendant's Motion to Suppress.

---

[31] TT 55-57; 112; 140; 147; 153-154.
[32] TT 57-63; 95.
[33] TT 63-66; 97; 109.

13

On May 5, 2014, the Defendant was scheduled to select a jury for trial. Prior to jury selection, several motions, including Defendant's oral Motion for Suppression of Evidence, were brought to the undersigned's attention.[34] [35]

In essence, Defendant argued that the firearm recovered by Officer Cooper should be suppressed because the Victim was not a resident of the trailer and therefore did not have the authority to consent to a search and seizure.[36] The Commonwealth responded that both parties were residing in the trailer and that the landlord/tenant documents reflected such. The Defendant averred that the documents the Commonwealth was relying were in regard to a prior lease application that was denied by the trailer park. Defendant stated he had reapplied for a lease in his sole name and that the Victim was not a tenant.[37]

The record reflects that Officer Cooper testified regarding the search in seizure in relevant part:

> COMMONWEALTH: Are you the Officer who recovered the firearm that is at issue currently?
>
> OFFICER COOPER: Yes.
>
> COMMONWEALTH: Could you please tell the Court how that came about?
>
> OFFICER COOPER: [ . . . ]We got called by the victim in the case, Brenda Worstell. She had gotten out of the hospital and she had returned back up to the scene there at 445 Moon Road. She said she had recovered some, recovered a firearm up there, knew where one was and wanted us to respond up there. [ . . . ] She directed us into the home, into the living room area and showed us a heater

---

[34] MT 21. (The numerals following the initials MT refer to the official transcript of the pre-trial motion proceedings conducted on May 5, 2014).

[35] In light of the motions raised on May 5, 2014, defense counsel requested trial be re-scheduled for June 10, 2014.

[36] MT 23.

[37] During the course of the sentencing hearing the Defendant asserted the Commonwealth violated discovery rules by not providing documentation of the landlord/tenant agreement. The Commonwealth indicated, despite its contention at the suppression hearing, that there was no documentation as to the landlord/tenant agreement. The Commonwealth did not enter into evidence any documentation to that effect. Officer Cooper testified at the suppression hearing that he did not inquire as to the landlord/tenant agreement and did not investigate a breaking and entering because there was no evidence that the doorway was forcibly entered. Consequently, there was no documentation of residency and no photographs taken of the doorway. ST 9; MT 24.

vent in the floor. She told us that she had knowledge, prior knowledge, that the defendant, Mr. Imhoff, that he drugs there in that area of the floor. [ . . . ]

COMONWEALTH: Officer, did you know Brenda Worstell to be residing at the address? That is the location strike. That is the location where the assault took place; correct?

OFFICER COOPER: That is correct.

COMMONWEALTH: That you filed the charges?

OFFICER COOPER: Correct.

COMMONWEALTH: Did you know her to be residing at that address with Mr. Imhoff?

OFFICER COOPER: That is what she indicated to us. I believe it was her ex-husband at the time and they were attempting reconciliation and she had been staying there.

COMMONWEALTH: So do you know that Ms. Worstell and Mr. Imhoff were married at one time?

OFFICER COOPER: That is what she told me. Yes.

[ . . . ]

MS. GAUSSA: Did you specifically ask her if that was her residence?

OFFICER COOPER: Yes, I did. I actually have her listed as that being her home in my report and then she listed additional address in Burgettstown, PA, which she indicated was her parent's residence.

[ . . .]

MS.GAUSSA: At this time, did you know if she was staying with her parent's?

OFFICER COOPER: At that time I don't know. It was my indication she was living at 445 Moon Road (trailer).

MS. GAUSSA: I apologize if you answered this prior. The Defendant was talking to me briefly here. Did she let you into the residence? How did you come to the residence?

OFFICER COOPER: She let us in.

MS. GAUSSA: Okay.

15

OFFICER COOPER: She was already there.

MS. GAUSSA: Did you notice anything on the door whenever you entered into the residence? Was it normal?

OFFICER COOPER: I don' recall anything on the door.

MS. GAUSSA: Did she have a key to the to the residence [sic]?

OFFICER COOPER: Didn't ask her. The door was already opened.[38]

The Trial Court is mindful that:

> Where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. If so, we are bound by those findings. . . . Moreover, if the evidence when so viewed supports the factual findings of the suppression court, this Court will reverse only if there is an error in the legal conclusions drawn from those findings.[39]

In *Commonwealth v Basking*, (970 A.2d 1181, 1187 (Pa.Super. 2009), the Pennsylvania Superior Court discussed third party consent at length:

> The United States Supreme Court has held that a third party has actual authority to consent to a search if he/she 'possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected.' The *Matlock* Court described 'common authority' as follows:
> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.[40]

---

[38] MT 31-40.

[39] *Commonwealth v. Basking*, 970 A.2d 1181, 1187 (Pa.Super.2009); *citing: Commonwealth v. Hill*, 874 A.2d 1214, 1216 (Pa.Super.2005) (citations omitted).

[40] *Id.* at 1188; *quoting: U.S. v. Matlock*, 415 U.S. 164, 94 S.Ct. 988 (1974).

16

The Defendant stresses that the landlord tenant agreement does not list the Victim as a co-tenant.[41] Due to the fact that no landlord/tenant agreement was entered into evidence at trial by either party, and Commonwealth's assertion that no such agreement was in its possession,[42] the record is unclear as to whether the landlord/tenant agreement listed the Defendant singularly as the tenant or listed the Defendant and Victim as co-tenants. Nevertheless, the record supports the Trial Court's conclusion that the Victim possessed common authority over the trailer and had the actual authority to consent to a search of the premises.

The Trial Court emphasizes, "the concept of common authority 'is based on mutual use of the property rather than a mere property interest.'"[43] The Defendant conceded that he attempted to reconcile with Victim prior to the incident and that they had made application to live in the trailer park as co-tenants. The Defendant further expounded that the application was denied due to her outstanding criminal cases.[44] However, the denial did not prevent the couple from co-habituating on the premises. While Defendant vehemently denied that Victim resided at the premises, he acknowledged she had at least a toothbrush and toothpaste at the trailer, "she stayed there".[45] Accordingly, the Trial Court found that the Victim resided at the trailer and had common authority over the premises and thus, actual authority to consent to a search of the premises.

The Trial Court further submits that if the Court does not find that the Victim had common authority over the premises, the search and seizure of the weapon was appropriate as police were relying on the Victim's apparent authority.

---

[41] MT 24-25.

[42] Commonwealth initially indicated they had documents demonstrating the couple were co-tenants. At the sentencing hearing, the Commonwealth indicated they did not have such documents. MT. 24-25. ST 9 (Sept. 5, 2014).

[43] *Basking*, 970 A.2d at 1188; *citing: Commonwealth v. Gutierrez*, 750 A.2d 906, 910 (Pa.Super.2000).

[44] MT 24-25.

[45] MT 25.

17

The *Basking* Court explained the apparent authority doctrine:

Third party consent is valid when police reasonably believe a third party has authority to consent. Specifically, the apparent authority exception turns on whether the facts available to police at the moment would lead a person of reasonable caution to believe the consenting third party had authority over the premises. If the person asserting authority to consent did not have such authority, that mistake is constitutionally excusable if police reasonably believed the consenter had such authority and police acted on facts leading sensibly to their conclusions of probability. . . . The standard to be applied in determining whether a police officer reasonably believed that a person possessed apparent authority to consent:

We are not allowing *carte blanche* consent entries into residences with the police officer being able to ratify his entry at a later date suppression hearing by merely stating that he was mistaken as to the actual authority of the consenting party. We hold that the police officer's reasonable mistake must be judged from an objective standard based on the totality of the circumstances. Although the police officer's state of mind is one factor to be considered in determining the reasonability of the mistake, it is not the only factor. Moreover, the police officer's mistake must be reasonable. In ambiguous situations, those situations which would cause a reasonable person to question the consenting party's actual authority or if the consenting party's assertions of authority appear unreasonable, a police officer should make further inquiries to determine the status of the consenting party. Reliance on a third party's bald assertion in such situations could subject any search to the remedy of the exclusionary rule.[46]

Based on the totality of the circumstances, the Trial Court determined that the facts available to Officer Cooper at the time of his search would lead a person of reasonable caution to believe that the Victim possessed apparent authority over the trailer, and could consent to its search.

Officer Cooper was initially called to the trailer on April 24, 2013, following an altercation between the Defendant and his ex-wife, the Vicitm. Officer Cooper was then re-called to the residence on April 26, 2013, when Victim claimed that she returned to the trailer to collect personal belongings and discovered the weapon Defendant used against her on April 24, 2013.

---

[46] *Basking*, 970 A.2d at 1190-91; *quoting: Commonwealth v. Strader,* 931 A.2d 630, 634 (Pa. 2007); *quoting: Commonwealth v. Blair,* 575 A.2d 593, 598 (Pa.Super.1990); (internal citations omitted).

18

Officer Cooper testified at the suppression hearing that Victim indicated to him that she resided at that address.

Significantly, when Officer Cooper and Sergeant Steven Horvath arrived on April 26, 2013, the door to the trailer was open. Officer Cooper did not observe any circumstances to suggest that the Victim broke into the trailer or that Victim did not reside at the trailer. Victim specifically indicated to Officer Cooper that she lived at the trailer as they were attempting reconciliation, however, during times of turmoil she would go back to her parents' home in Burgettstown. Consequently, Officer Cooper listed both addresses in his report for the Victim.[47]

Victim directed Officer Cooper to the living room and instructed Officer Cooper to search the heater vent in the floor. From these facts, Officer Cooper had ample reason to believe that Victim retained mutual use of the premises. Although Officer Cooper did not inquire as to whether Victim paid bills or received mail at the residence, on this record, the Trial Court concluded that the surrounding circumstances evinced an unambiguous situation in which Officer Cooper had no reason to doubt Victim's apparent assertions of common authority. "The question is what is apparent, not actual, and the reasonableness of the police belief in that apparent authority."[48]

Moreover, if the Court finds that Victim's common authority to be ambiguous, the Trial Court submits that any mistake was reasonable under the circumstances. By the Defendant's own admission the Victim "stayed" at the trailer.[49] The couple had previously been married and they were attempting reconciliation. The residence was also the same location the assault took place just a few days prior. When the officers arrived at the scene, the door to the residence was open and as Victim explained she was collecting her personal belongings. The Trial Court finds this

---

[47] MT 30-40.
[48] *Commonwealth v. Strader*, 931 A.2d 630, 635 (Pa. 2007).
[49] MT 25.

19

alone was enough for a person exercising reasonable caution to establish that the Victim had common authority over the premises. Notwithstanding this information, Officer Cooper specifically inquired to the Victim as to whether she resided at the trailer. Victim consistently responded that she resided at the trailer, and at times of turmoil she would stay with her parents.[50]

It is further observed, "as with any suppression claim, it is the information known at the time, not that learned after the fact, that controls the legal analysis."[51] The Trial Court submits, therefore, that Officer Cooper reasonably believed that Victim's consent to search was valid under the apparent authority doctrine.

The Defendant next claims that the Trial Court erred when it denied the Defendant's Motion to Dismiss pursuant Pennsylvania Rule of Criminal Procedure 600.

Defendant filed a written Motion to Dismiss pursuant Pa.R.Crim.P. 600 on March 18, 2014, at No. 281-2013. Therein, Defendant alleged that 443 days had elapsed since the criminal complaint was filed on December 22, 2013.[52] Defendant was detained and remained in custody since the filing of new charges at No. 1497-2013 on April 24, 2013. Defendant averred that there were only 77 excludable days, which included time that a mental health examination was ordered.

Additionally, at No. 1497-2013 and No. 281-2013, the Defendant filed a pro se Motion for Nominal Bond on December 6, 2013. A hearing on the Defendant's Motion for Nominal Bond was held May 5, 2014. The Trial Court will address these claims collectively.[53]

---

[50] MT 32-36.

[51] *Strader*, 931 A.2d at 635.

[52] No. 281-2013.

[53] On May 5, 2014, the Trial Court intended on selecting a jury solely on case No. 1497-2013. However, following the discussion of the motions, and continuance by defense counsel, the Trial Court determined to try both cases together.

20

Rule 600 of the Pennsylvania Rules of Criminal Procedure provides that trial must commence within 365 days:

> (A)(2) Trial shall commence within the following time periods.
> (a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.
> [ . . . ]
> (B) Pretrial Incarceration
> Except in cases in which the defendant is not entitled to release on bail as provided by law, no defendant shall be held in pretrial incarceration in excess of
> (1) 180 days from the date on which the complaint is filed;
> [ . . . ]
> (C)(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.
> (2) For purposes of paragraph (B), only periods of delay caused by the defendant shall be excluded from the computation of the length of time of any pretrial incarceration. Any other periods of delay shall be included in the computation.[54] [55]

The Trial Court found that, as set forth herein, the Commonwealth acted within the parameters and purpose of Pa.R.Crim.P. 600. When evaluating Rule 600 issues, the "standard of review of a trial court's decision is whether the trial court abused its discretion. . . . The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court."[56] [57]

---

[54] Pa.R.Crim.P. 600.

[55] In the context of Rule 600, there is a distinction between "excludable time" and "excusable delay." Unlike 'excludable time,' . . . 'excusable delay' is not expressly defined in Rule 600, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence. *Commonwealth v. Frye*, 909 A.2d 853, 858 (Pa. Super. 2006);(internal citations omitted).

[56] *Commonwealth v. Peterson*, 19 A.3d 1131, 1134-1135 (Pa.Super. 2011).

[57] Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record, discretion is abused. *Commonwealth v. Peterson*, 19 A.3d 1131, 1134-1135 (Pa.Super. 2011).

21

In making its determination, the Trial Court first took into consideration the principles supporting Pa.R.Crim.P. 600:[58]

> This Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. . . . So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime.[59]
>
> In order to balance these rights, the crux of the inquiry must be:
>
> Whether the Commonwealth exercised due diligence, and whether the circumstances occasioning the delay of trial were beyond the Commonwealth's control. . . . *Due diligence* is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort.[60] [61]

Reasonable effort, "includes such actions as the Commonwealth listing the case for trial prior to the run date to ensure that the defendant was brought to trial within the time prescribed by Rule 600."[62]

The Trial Court found that due diligence was exercised by the Commonwealth. As set forth above, the Defendant was incarcerated following charges filed on April 24, 2013. On April 24, 2013, and April 30, 2013, the Defendant continued his preliminary hearings at No. 1497-2013. The Defendant was not rescheduled until June 19, 2013. At that hearing the Defendant waived his preliminary hearing.[63] Thereafter, Defendant filed a Motion to Reinstate the Preliminary Hearing on July 19, 2013. That motion was presented and denied August 1, 2013. Subsequently, defense counsel made a Motion for Mental Health Evaluation on August 6, 2013.

---

[58] Rule 600 was adopted in 1973 as Rule 1100. New Rule 600 adopted October 1, 2012, effective July 1, 2013.

[59] *Commonwealth v. Peterson*, 19 A.3d 1131, 1135 (Pa.Super. 2011).

[60] *Commonwealth v. Selenski*, 994 A.2d 1083, 1088-1089 (Pa. 2010); *citing: Commonwealth v. Hill*, 736 A.2d 578, 588 (Pa. 1999).

[61] Pa.R.Crim.P. 600 was amended in 2012. In the explanatory Comments to Rule 600, the quotation listed in footnote 36 from *Commonwealth v. Selenski*, 994 A.2d 1083 (Pa. 2010) is cited. Additionally, the quotation was recently cited in *Commonwealth v. Davis*, 86 A.3d 883, 891 (Pa.Super. 2014).

[62] *Commonwealth v. Hunt*, 858 A.2d 1234, 1242 (Pa. Super. 2004).

[63] MT 40.

22

Defense counsel filed a Petition for Reduction of Monetary Condition of Bail on August 7, 2013. The Trial Court scheduled a hearing on the aforementioned motion for September 4, 2013. At the hearing, the Trial Court denied the Defendant's Motion for Reduction of Bail and granted the Commonwealth's Motion for Revocation of Bail/Bond at No. 281-2013.

Thereafter, on November 1, 2013, John Puskar, Esquire, made a Motion to Withdraw as counsel.[64] On February 14, 2014, an Order was generated appointing Molly Maguire-Gaussa, Esquire, Washington County Conflict Counsel, as counsel for the Defendant.[65] Additionally, the Defendant filed a Motion for Habeas Corpus on December 10, 2013, and the aforementioned Motion to Dismiss on March 14, 2014.[66] Consequently, on May 5, 2014, the Commonwealth averred there was a total of 222 days of excludable time.

The Commonwealth further argued that after taking under consideration the Petition for Habeas Corpus Motion, the amount of excludable time would range from December 10, 2013, to the date of the hearing on May 5, 2014.

The Trial Court found that time was indeed excludable. On May 5, 2014, the Trial Court denied Defendant's request for Nominal Bond on the record.[67] Thereafter, an additional hearing was conducted on May 29, 2014, for Defendant's Motion to Replace Counsel and Defendant's Motion for Recusal. An order was issued denying the Defendant's motions as well as denying the Defendant's Motion to Dismiss charges under Pa.R.Crim. P. 600.

The Trial Court acknowledges:

The mere filing of a pretrial motion by a defendant does not automatically render him unavailable. Rather, a defendant is only unavailable for trial if a delay in the

---

[64] John Puskar, Esquire, made a Motion to Withdraw as counsel following a threatening and derogatory letter sent to him by Defendant.

[65] Order for replacement counsel was mistakenly dated September 19, 2013. (Previous counsel did not petition to withdraw until October 31, 2013.) The Order was filed with the Washington County Clerk of Courts on February 14, 2014.

[66] Defendant also made various other pro se motions not listed above that are in the record.

[67] MT 56.

23

commencement of trial is caused by the filing of the pretrial motion. . . .If a delay is created, in order to establish that the delay is excludable, the Commonwealth must demonstrate by a preponderance of the evidence, that it exercised due diligence in opposing or responding to the pretrial motion.[68]

During the respite in time between charges being filed and jury selection, the Defendant underwent a mental health evaluation, sought new counsel several times, and notably, as observed above, filed a prolific amount of pro se motions, causing significant delays in the expeditious resolution of the matter.

Moreover, following the Defendant's request for replacement counsel for Mr. Puskar, in the 2014 calendar year, only one trial term was available between the appointment of replacement counsel Molly Maguire-Gaussa, Esquire, in February of 2014 and May 5, 2014, when the Defendant was originally scheduled to select a jury. Due to Defendant's request for additional time to prepare for trial at the May 5, 2014, hearing, defense counsel requested a continuance. Jury selection was then rescheduled for June 9, 2014.

The Trial Court scheduled numerous hearings to address the Defendant's various motions. Thus, due to Defendant's filing of numerous pretrial motions, the commencement of trial was delayed. Such delays encountered during the pendency of the case were clearly beyond the Commonwealth's control, and the Commonwealth exercised due diligence and reasonable efforts in bringing this matter to trial, as evidenced by setting the trial for May 5, 2014.

Accordingly, the Trial Court submits that no error was committed and no abuse of discretion occurred when the undersigned denied the Defendant's Motion to Dismiss and Motion for Nominal Bond under Rule 600.

---

[68] *Commonwealth v. Lynn*, 815 A.2d 1053, 1059 (Pa.Super. 2003); quoting *Commonwealth v. Hill*, 558 Pa. 238, 736 A.2d 578, 587 (1999).

24

In the Defendant's next claim of error, he asserts that the Trial Court erred when it admitted Commonwealth exhibits 1, 2, 3 into evidence. The Trial Court submits that the exhibits were properly admitted and this claim lacks any arguable merit.

The standard of review when ruling on the admissibility of evidence is well settled:

Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.[69]

No error was committed in admitting photographs of the Victim's injuries. The Commonwealth has the burden of proving all the elements of the crimes charged against the Defendant beyond a reasonable doubt, including the injuries suffered by the Complainant.[70]

Aggravated Assault is defined as:

(a) Offense defined—A person is guilty of aggravated assault if he:
(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
. . .
(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon;[71]

Simple Assault is defined as:

(a) Offense defined—Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:
(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;[72]

---

[69] *Commonwealth v. Handfield,* 34 A.3d 187, 207-208 (Pa.Super. 2011).
[70] *Commonwealth v. Widmer,* 744 A.2d 745, 751 (Pa. 2000); *citing Commonwealth v. Karkaria,* 625 A.2d 1167 (Pa. 1993).
[71] 18 Pa. C.S. § 2702(a)(1).
[72] 18 Pa. C.S. § 2701 (a)(1).

25

As demonstrated above, an element of Aggravated Assault is the infliction of actual bodily injury or seriously bodily or an attempt to cause such injuries. Likewise, an element of Simple Assault is the infliction of bodily injury or an attempt to cause such injury.

The Trial Court notes that "the Commonwealth *need* not establish that the victim actually suffered bodily injury; rather, it is *sufficient* to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury. This intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury."[73] (Emphasis added). While it is *sufficient* for the prosecution to merely establish an attempt to inflict serious bodily injury and bodily injury to support a conviction, this does not require the Commonwealth halt their case at that point. The prosecution may only *need* establish an attempt to injure, but that does not prohibit the prosecution from submitting, and the Trial Court admitting, evidence that further establishes the elements of Aggravated Assault and Simple Assault have been proven beyond a reasonable doubt.

It is not an abuse of discretion for relevant evidence that establishes the elements of the crime to be admitted. Defendant does not make any specific allegation as to why these photographs should not have been admitted. Moreover, the photographs illustrating the Victim in a neck brace were not so inflammatory that the prejudice would outweigh their probative value. Accordingly, this issue on appeal must fail.

In claims four and five, Defendant argues that the Trial Court erred when it denied the Defendant's Motion to Dismiss after the close of the Commonwealth's case and that the evidence presented by the Commonwealth was insufficient to support each of the Defendant's convictions, respectively. The Trial Court submits these claims are without merit and will address them collectively.

---

[73] *Commonwealth v. Klein*, 795 A.2d 424, 428 (Pa.Super. 2002).

26

The Superior Court of Pennsylvania in *Commonwealth v. Foster,* 33 A.3d 632 (Pa.Super. 2011), reasserted that, "A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge."[74] Following the prosecution's case in chief, the Trial Court found that the testimony and evidence presented by the prosecution were sufficient to establish the elements of the crimes of Possession of Firearm Prohibited[75], Terroristic Threats with Intent to Terrorize Another[76], Unlawful Restraint with Serious Bodily Injury[77] Simple Assault[78], Recklessly Endangering Another Person[79], Aggravated Assault,[80] Simple Assault[81] and Aggravated Assault.[82] [83] Moreover, following the jury's verdict, the Trial Court further finds that the evidence presented in this matter was sufficient to sustain the Defendant's conviction on all of the charges for the reasons set forth herein.

A claim challenging the sufficiency of the evidence in a criminal case is a question of law requiring the reviewing court to determine whether all of the elements of the crimes charged were proven beyond a reasonable doubt.[84] In making this determination, this Court is required to review the entire record and view all of the evidence presented at trial in the light most favorable to the verdict winner, the Commonwealth, and to give the Commonwealth the benefit of all reasonable inferences from the facts presented.[85] "Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the

---

[74] *Commonwealth v. Foster,* 33 A.3d 632, 635 (Pa.Super. 2011).
[75] 18 Pa.C.S. § 6105(a)(1).
[76] 18 Pa.C.S. § 2706(a)(1).
[77] 18 Pa.C.S. § 2902(a)(1).
[78] 18 Pa.C.S. § 2701(a)(1).
[79] 18 Pa.C.S. § 2705.
[80] 18 Pa.C.S. § 2702(a)(1).
[81] 18 Pa.C.S. § 2701(a)(1).
[82] 18 Pa.C.S. § 2702(a)(4).
[83] Defendant was found not guilty of this charge.
[84] *Widmer,* 744 A.2d at 751 (Pa. 2000); *citing: Commonwealth v. Karkaria,* 625 A.2d 1167 (Pa. 1993).
[85] *Id.* at 751; *citing Commonwealth v. Chambers,* 599 A.2d 630 (Pa. 1991).

laws of nature, and then the evidence is insufficient as a matter of law."[86] However, it is *not* for the reviewing Court to determine the credibility of witnesses and the weight to be accorded to the evidence produced, as these are matters solely within the province of the trier of fact, who is free to believe all, some, or none of the evidence.[87]

From the testimony and evidence presented at trial, it was reasonable for the jury to believe that the Defendant committed the offense of Aggravated Assault. At trial, the jury heard testimony that the Defendant intentionally, knowingly and recklessly caused, or attempted to cause, serious bodily injury to Victim, by repeatedly punching and strangling Victim causing her to become unconscious, urinate in her pants and fear for her life.

Likewise, the Trial Court finds that the evidence presented at trial linking the Defendant to the handgun recovered was sufficient for the jury to convict Defendant of the charge of Possession of Firearms Prohibited. On April 24, 2013, Defendant was in possession of a black Beretta .22 LR caliber semi-automatic handgun after Defendant had previously been convicted of 18 Pa.C.S. 2702(a)(1), Aggravated Assault.[88]

Evidence adduced at trial was sufficient to support a finding that the Defendant on or about April 24, 2013, threatened to commit the crime of violence, Homicide, with the intent to terrorize, so as to support a conviction for Terroristic Threats. Evidence indicated Victim pointed a .22 caliber handgun at the chest of Victim and repeatedly stated he intended to kill her.

Viewing all the evidence in the light most favorable to the Commonwealth, the Trial Court finds that there was sufficient evidence presented to convict Defendant of Unlawful Restraint by knowingly and unlawfully restraining Victim. Defendant exposed Victim to serious

---

[86] *Id; citing: Commonwealth v. Santana,* 333 A.2d 876 (Pa. 1975).
[87] *Commonwealth v. McCalman,* 795 A.2d 412, 415 (Pa. Super. 2002); *citing Commonwealth v. Passarelli,* 789 A.2d 708, 716 (Pa.Super. 2001).
[88] No. 2726-2004.

28

bodily injury when Defendant held a .22 caliber handgun on the Victim and did not permit her to leave for approximately 45 minutes on April 24, 2013.

From the testimony and evidence presented at trial, it was also reasonable for the jury to believe that the Defendant committed the offenses of Simple Assault on December 22, 2012, and on April 24, 2013.

On December 22, 2013, evidence was sufficient to show that Defendant intended to knowingly, intentionally or recklessly cause or attempt to inflict bodily injury to Victim when he choked Victim causing significant redness and scratches to the right side of her neck.

The Commonwealth likewise established the requisite elements of Simple Assault when it submitted evidence that on April 24, 2013, Defendant attempted to cause or intentionally, knowingly or recklessly caused bodily injury to Victim. Evidence demonstrated Defendant punched Victim several times causing her left eye to swell and strangled Victim causing her to lose consciousness and urinate in her pants.

Lastly, there was sufficient evidence presented to convict Defendant of Recklessly Endangering Another Person when evidence demonstrated on April 24, 2013, Defendant recklessly engaged in conduct which placed Victim in danger or death or serious bodily injury. Evidence indicated Defendant pointed a .22 caliber handgun at Victim and also assaulted Victim by punching her in the face several times and strangling Victim until she became unconscious and urinated in her pants.

Accordingly, the Trial Court asserts the testimony and evidence established the requisite elements of the crimes of Possession of Firearm Prohibited[89], Terroristic Threats with Intent to Terrorize Another[90], Unlawful Restraint with Serious Bodily Injury[91] Simple Assault[92],

---

[89] 18 Pa.C.S. § 6105(a)(1).
[90] 18 Pa.C.S. § 2706(a)(1).

29

Recklessly Endangering Another Person[93], Aggravated Assault[94] and Simple Assault.[95] Thus,

Defendant's claims of error lack any arguable merit. Accordingly, claims four and five must fail.

Next, the Defendant avers the Trial Court committed error when it instructed the jury on

consciousness of guilt and for denying Defendant's request to instruct the jury on self-defense.

The jury instruction regarding Consciousness of Guilt was read as follows:[96]

> THE COURT: There is also evidence presented in this case by the police and by the defendant that tended to show the defendant concealed his whereabouts from the police when they initially came to the house by saying he was at another location. The defendant maintained that he only did so to give himself time to call for help from his sister and his mother. The credibility, weight and effect of this evidence is another consideration for you to decide.
> Generally speaking when a crime has been committed and a person thinks he or she is or may be accused of committing a crime and he or she flees or conceals himself or herself, such flight or concealment is a circumstance tending to prove that that person is conscious of their guilt. Such flight or concealment does not necessarily show consciousness of guilt in every case. A person may flee or conceal themselves for some other motive and may do so even though innocent. Whether the evidence of the defendant's concealment in this case should be looked upon as tending to prove his guilt depends on the facts and circumstances of this case and especially upon the motives that may have prompted his concealment. You may not find the defendant guilty solely on the basis of evidence of flight or concealment; however, it is evidence you should consider.[97]

It is well established that, "the nature of a court's instructions to the jury is within the

discretion of the court, so long as the court accurately instructs the jury on the appropriate legal

principles involved."[98]

Additionally, it has been held that when reviewing a challenge to a portion of a jury

instruction:

---

[91] 18 Pa.C.S. § 2902(a)(1).

[92] 18 Pa.C.S. § 2701(a)(1).

[93] 18 Pa.C.S. § 2705.

[94] 18 Pa.C.S. § 2702(a)(1).

[95] 18 Pa.C.S. § 2701(a)(1).

[96] 3.14 (Crim) Consciousness of Guilt, Flight, or Concealment as Showing, Pa. SSJI (Crim), §3.14 (2005).

[97] TT 267-268.

[98] *Commonwealth v. Willis*, 990 A.2d 773, 776 (Pa.Super. 2010); *quoting: Commonwealth v. Kim,* 888 A.2d 847, 852 (Pa.Super. 2005); *Commonwealth v. Hartey,* 621 A.2d 1023, 1028 (1993).

We must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.[99]

The Trial Court submits that it did not abuse its discretion when it instructed the jury on consciousness of guilt. The record demonstrates the Defendant testified as follows:

> DEFENDANT: Officer Harton, I believe, from Houston said where are you and I lied to him. I told him. I was on Railroad Street and he asked me where is Railroad Street and I said down the street behind Sam's Place. It was a bar down the street, and I was pretty certain that was the road down that way and I hung up on him..."[100]

[ . . . ]

> COMMONWEALTH: So when the police called, you said Sergeant Harton called you, why did you lie any say I'm not home if you didn't do anything wrong? Why did you lie to the police and say I'm not home?
> DEFENDANT: I don't know.

> COMMONWEALTH: Why didn't you come out when the police came there and were yelling for you to come out if you didn't do anything wrong? Why didn't you step out?

> DEFENDANT: I wanted to get ahold of somebody and tell them what was going on before I turned myself out?[101]

As reflected above the Defendant conceded that he fabricated an address to the police when they inquired as to his location. Additionally, the Defendant acknowledged that he did not immediately exit the trailer when the police were outside. Although the Defendant maintained he did so in order to get in touch with a family member, the Trial Court found that the testimony warranted the instruction. It is further submitted that the Trial Court fashioned the instruction to reiterate to the jury the Defendant's claim that he lied to the police in order to reach a family

---

[99] *Commonwealth v. Baker*, 963 A.2d 495, 507 (2008); *quoting: Commonwealth v. Jones,* 954 A.2d 1194, 1198 (Pa.Super.2008).
[100] TT 214.
[101] TT 230.

31

member by telephone. Accordingly, the Trial Court properly fashioned the jury instructions to accurately reflect the law and no abuse of discretion occurred.

In the second instance, the Trial Court submits that it properly denied the Defendant's request to instruct the jury on self-defense. "Before self defense may be at issue, there must be some evidence, from whatever source, to justify a finding of self defense."[102] Based on the Defendant's testimony and the evidence, there was no indication that the Defendant acted in self-defense.[103] The Defendant's testimony on direct examination regarding Victim's conduct in relevant part states:

> DEFENSE COUNSEL: When you say flipping out, can you describe that? What do you mean by flipping out?
>
> DEFENDANT: Screaming and just a temper tantrum trying to get her way. You know, I grabbed her by the shoulders and said Brenda it's going to be okay. She started firing shots at me in the face and just rapid little shots. Nothing bad. I mean, she is a female. I can't say that I felt the punches at the time, but I tasted blood in my mouth. She got me a good one, and I tasted the blood so I grabbed her arm and smacked her.
>
> DEFENSE COUNSEL: What do you mean you smacked her?
>
> DEFENDANT: I smacked her in the eye. As soon as I hit her, I kind of broke down and starting crying.[104]

The Defendant exposed during his own testimony that he indeed acted in retaliation rather than self-defense after Victim allegedly punched him in the face. "The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal."[105]

---

[102] *Commonwealth v. Bailey*, 324 Pa. Super. 236, 239, 471 A.2d 551, 553 (1984);(internal citations omitted).
[103] TT 235.
[104] TT 211.
[105] *Commonwealth v. Scott*, 73 A.3d 599, 602 (Pa.Super. 2013); *citing: Commonwealth v. Brown*, 911 A.2d 576, 583 (Pa.Super. 2006).

The Defendant did not demonstrate that he was in fear that necessitated protection by force. As indicated above, the record clearly supports that the Defendant did not act in justifiable self-defense. Thus, Defendant has failed to show that the Trial Court committed error by refusing to instruct the jury on self- defense.

The Defendant also argues that the verdict was against the weight of evidence on each count including, Possession of Firearm Prohibited[106], Terroristic Threats with Intent to Terrorize Another[107], Unlawful Restraint with Serious Bodily Injury[108] Simple Assault[109], Recklessly Endangering Another Person[110], Aggravated Assault[111] and Simple Assault.[112]

The Defendant was found guilty of the above charges on June 12, 2014. The Defendant was sentenced on the above convictions on September 5, 2014. However, the record demonstrates that the Defendant never filed a motion challenging that the verdict was against the weight of evidence. Thus, the Trial Court asserts that this claim of error is waived.[113] [114] To the extent the Court determines the Defendant did not waive this claim, the Trial Court submits the verdict was supported by the weight of evidence.

The Trial Court is given considerable discretion when ruling on a Defendant's motion that the verdict is against the weight of the evidence.[115] "The Trial Court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice."[116]

---

[106] 18 Pa.C.S. § 6105(a)(1).
[107] 18 Pa.C.S. § 2706(a)(1).
[108] 18 Pa.C.S. § 2902(a)(1).
[109] 18 Pa.C.S. § 2701(a)(1).
[110] 18 Pa.C.S. § 2705.
[111] 18 Pa.C.S. § 2702.
[112] 18 Pa.C.S. § 2702(a)(1).
[113] Pa.R.Crim.P. 607. A claim that the verdict is against the weight of the evidence must be raised orally, on the record, at any time before sentencing, by written motion before sentencing, or in a post sentence motion.
[114] At the Sentencing hearing, the Trial Court addressed the Defendant's Motion to Strike the Verdict, filed July 11, 2014. During that hearing, the Trial Court also asserted that the Trial Court did not find the jury's verdict was such that it would shock the conscience of the Court.
[115] Commonwealth v. Cousar, 928 A.2d 1025, 1035-1036 (Pa. 2007).
[116] Id. at 1036.

Therefore, a trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.[117]

A motion for a new trial on the grounds that the verdict is against the weight of the evidence concedes that there is sufficient evidence to sustain the conviction.[118] The Pennsylvania Supreme Court stated:

> A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence, do not sit as the thirteenth juror. Rather the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.[119]

A challenge to the weight of the evidence is a matter of the Trial Court's sound discretion, appellate review of the determination is solely a question of whether the Trial Court abused its discretion, and does not reach the underlying question of whether the verdict was against the weight of the evidence.[120] The Superior Court of Pennsylvania has stated that "[d]iscretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will."[121]

The evidence presented at trial, and as described above, overwhelmingly supported the verdict rendered by the jury. The Commonwealth's witnesses testified in a credible manner to the facts of the case. The Defendant, on the other hand, claimed in his defense that the Victim became irate and he was forced to act in self-defense. The defense put forth that the Victim was

---

[117] *Id; citing Commonwealth v. Keaton*, 729 A.2d 529, 540-541 (Pa. 1999).

[118] *Commonwealth v. Whiteman*, 485 A.2d 459 (Pa. Super. 1984).

[119] *Widmer*, 744 A.2d at 751-752 (Pa. 2000);(internal citations omitted).

[120] *Id.* at 753; *citing Commonwealth v. Brown*, 648 A.2d at 1177 at 1189 (Pa. 1994).

[121] *Id.* at 753.

intoxicated and became enraged at the Defendant and began punching him in the face. Defendant in response "smacked her" in what he claimed was self-defense, despite his own admission that he was not in fear that necessitated protection by force.[122] The jury justifiably rejected this defense. Simply put, based on the evidence elicited during trial, the Trial Court could not find that the evidence was so contrary to the verdict as to shock the conscience of the Trial Court or to determine that the Defendant was denied justice.

The Defendant also asserts that it was error for the Trial Court to deny Defendant's Motion for Mistrial.

The record reveals in relevant part:

THE COURT: From what I understood from the sidebar, you're saying that you checked your email and you had not received these photographs that were taken of Ms. Worstell at the police station following the days after the assault and that would be Commonwealth Exhibits 4 through 7; right?

DEFENSE COUNSEL: Correct, Your Honor. Yes.

THE COURT: Take a look at them and make sure they're correct. As I recall the testimony, numbers 4 through 7 were taken at the police station following the event and numbers 1 through 3 were at Canonsburg Hospital ER.

DEFENSE COUNSEL: Yes.

THE COURT: And you're saying those were not transmitted to you by email in discovery or however?

DEFENSE COUNSEL: Correct, Your Honor. 4 through 7 were not.

THE COURT: Ms. Clingerman?

COMMONWEALTH: Your Honor, I believe they had come in from attachments from the police, and I had thought I had forwarded them if not all. If I did not, it's because I'm technologically impaired when it comes to computer systems; however, Ms. Gaussa was free at any time to come and view anything that the Commonwealth had and to look at the file. In addition, there is nothing new on the photographs that were taken the day of. The only difference is they darkened with time because of the time. I don't see how that would change in any way how

---

[122] TT 211.

35

Mr. Imhoff would present his defense. There is nothing different or new about them.

THE COURT: And you did receive in discovery the medical from Canonsburg?

MS. GAUSSA: I received medical from Canonsburg and Weirton Hospital.

THE COURT: And they haven't come into the evidence in the trial yet but that's consistent with the injuries that you see on those pictures?

DEFENSE COUNSEL: They are, Your Honor. From what I have read, they are.

THE COURT: So if you hadn't received these and I'm not doubting your word but not receiving these and now seeing them and having them come into trial, would that change your defense to this at all?

DEFENSE COUNSEL: Those pictures, Your Honor, had we had them prior for authentication with the police officer wouldn't in regards to assisting in defense. They are consistent with medical reports but if I were to have them, I would have had more ample opportunity to see the injuries closer up as they appear.

THE COURT: But would that change your trial tactics at all had you seen them sooner?

DEFENSE COUNSEL: They would not, Your Honor.

[. . .]

DEFENSE COUNSEL: I'd like to assert a motion for a mistrial which is based on the failure to provide all the pictures for evidence at this time. I know we had just addressed the issue of the pictures, but I wanted to assert that at this time, Your Honor.

THE COURT: Based on you acknowledging having the other three pictures showing the same injuries and that you have the medical and then you conceding that it wouldn't change the defense of your case and I don't see how it would change the defense, the Court denies your motion for mistrial.[123]

It is well settled that:

The review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is

---

[123] TT 134-137.

overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused.[124]

Pennsylvania Rule of Criminal Procedure 605 states in relevant part:

When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity.[125]

It is further observed that Pennsylvania Rule of Criminal Procedure 573 in relevant part states:

(B) Disclosure by the Commonwealth
(1) Mandatory:
In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

[ ... ]
(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence; [ ... ][126]

If prospective evidence is not provided in compliance with Pa.R.Crim.P.573, the rule dictates:

(E) Remedy. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.[127]

The Trial Court submits that it properly fashioned a remedy in accordance with

Pa.R.Crim.P. 573(e) based on the subject of the photographs. As the record reveals above, the

---

[124] *Commonwealth v. Chamberlain*, 30 A.3d 381, 422 (Pa. 2011); *quoting: Commonwealth v. Wright*, 961 A.2d 119, 142 (2008); (internal quotations omitted).
[125] Pa.R.Crim.P. 605.
[126] Pa.R.Crim.P. 573.
[127] Pa.R.Crim.P. 573.

photographs at issue were images of the same injuries previously produced in discovery for the Defendant. The photographs were merely images of the injuries taken one day post incident to demonstrate increased bruising that the Victim endured from the assault. Moreover, Defendant had in its possession the medical records of Victim describing her injuries. Thus, the photographs would not in any manner, as conceded by defense counsel, change the defense.

It should also be noted, "no *Brady* violation occurs where the parties had equal access to the information or if the defendant knew or could have uncovered such evidence with reasonable diligence."[128] [129] While the Court acknowledges that *"Brady"* violations reference mandatory exculpatory evidence, the Trial Court submits that the matter at bar similarly entails mandatory disclosure of evidence, although inculpatory in nature. The Trial Court submits that the defense had the opportunity to view any evidence in the Commonwealth's file if requested.

The Trial Court observes that, "the remedy of a mistrial is an extreme remedy required 'only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal.'"[130] Obviously, the Defendant could have uncovered such evidence with reasonable diligence. In no manner was the Defendant deprived of a fair and impartial trial when additional photographs of Victim's injuries already in their possession were uncovered. The Trial Court asserts that it acted in accordance with Pa.R.Crim.P. 573(e) and fashioned a proper remedy based on the totality of the circumstances by providing the defense an opportunity

---

[128]*Commonwealth v. Collins*, 888 A.2d 564, 578 (Pa. 2005); citing: *Commonwealth v. Morris*, 822 A.2d 684, 696 (Pa. 2003); referencing: *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).
[129]*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963), established an ongoing obligation to disclose exculpatory evidence. There is a "Brady" violation when there has been suppression by the prosecution of either exculpatory or impeachment evidence that was favorable to the accused, and the omission of such evidence prejudices the defendant.
[130] *Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa.Super. 2009); *quoting: Commonwealth v. Johnson,* 719 A.2d 778, 787 (Pa.Super.1998); *citing: Commonwealth v. Montgomery,* 626 A.2d 109, 112–113 (Pa. 1993).

38

to inspect the photographs. Accordingly, the Trial Court discerned no prejudice to the Defendant and likewise found no grounds for a mistrial.

The Defendant next avers that the Trial Court erred when it denied the Defendant's Post-Verdict Motions. The record reveals that the Defendant filed various Post-Verdict Motions. It is first noted that the Defendant does not cite with any specificity as to which Post-Verdict Motions the allegations of error apply.

The Defendant filed a Motion to Strike the Verdict on July 11, 2014. At the Sentencing hearing on September 5, 2014, the Trial Court denied the Defendant's Motion to Strike the Verdict for the reasons set forth above in claim numbers four and five.

Defendant also filed several pro se motions on August 3, 2014. The record demonstrates these motions were addressed at the sentencing hearing on September 5, 2014.[131] The Defendant's claim that the Trial Court erred when it denied the Defendant's request for a self-defense instruction and his claim that discovery was not produced was previously discussed above.[132] The Trial Court will address below the Defendant's pro se motion that the Trial Court erred when it granted the Commonwealth's Leave to Amend Information.

The Defendant's remaining pro se motion claimed that the verdict should be vacated because the conviction was based on perjured testimony. Defendant argued at the September 5, 2014, hearing:

> THE DEFENDANT: The perjury about her written statement and her statement to the police was we were fighting because she alleged I cheated on her. After she got charged with a controlled delivery, drug delivery charge, she changed her

---

[131] ST 4-15. (The numerals following the initials ST refer to the official transcript of the sentencing proceeding conducted September 5, 2014.)

[132] Defendant also stated it was error for the conviction to be based on serious bodily injury when no serious bodily occurred. However, the jury specifically found, as indicated on the verdict slip, the Victim suffered serious bodily injury. The Trial Court found that was a question of fact for the jury to make a determination.

39

testimony in court to we got into a fight because I was forcing her to sell drugs and she got ripped off.[133]

The Trial Court submits that the reasoning behind the assault is of no consequence. The Defendant admitted on the stand that he engaged in a fight with the Victim and confessed he struck Victim at least once.[134] Moreover, defense cross examined Victim at length regarding her written statement to the police as to the events of the April 24, 2013, and was not prevented from conducting cross-examination of that, or of any other perceived inconsistent testimony of the Victim. The Victim testified in a credible manner and the jury, as the fact finder, chose to believe the testimony of the Victim.

Thus, any claim of error that the verdict should be vacated because the verdict was based on perjured testimony is without any merit.

In the Defendant's final claim the he asserts that the Trial Court erred when it granted the Commonwealth's Motion for Leave to Amend Information.

Pennsylvania Rule of Criminal Procedure 564 states:

The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.[135]

The Criminal Complaint and Affidavit of Probable Cause were filed on April 24, 2013, by Officer Donald Cooper. Thereafter, on April 30, 2014, Officer Cooper supplemented the Affidavit of Probable Cause and Amended the Criminal Complaint following the Victim's discovery of the weapon used in the assault by the Defendant.[136]

---

[133] ST 11.
[134] TT 211; 219; 222.
[135] Pa.R.Crim.P. 564.
[136] Based on the additional information, in the amended criminal complaint Officer Cooper added charges of Terroristic Threats and Possession of Firearm Prohibited.

On May 5, 2014, the Commonwealth presented a Motion to Amend Charges. The Commonwealth sought to amend the grading of the Aggravated Assault charge from 18 Pa.C.S. § 2702(a)(4), a felony of the second degree, to 18 Pa.C.S. § 2702(a)(1), a felony of the first degree.

Title 18 Pa.C.S. section 2702 states in relevant part:

(a) Offense defined—A person is guilty of aggravated assault if he:
(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
[ . . . ]
(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon;[137]

The Affidavit of Probable Cause states in relevant part:

[Defendant] pulled the gun out and pointed it at her chest and told her, 'I'm going to kill you and then kill myself' . . . he [Defendant] then tackled her and fell to the floor by the couch. . . . he got on top of her stomach and held her down. She [Victim] stated that he had both hands around her neck and was choking her. Worstell stated that she lost consciousness about four times and did urinate in her pants. She stated that when she would wake up she tried to push him off but he was too big. She stated that he did punch her two or three times in the left eye and temple area thus causing injury. She said he again pointed the gun at her face and said 'I can shoot you right now'.[138]

The Court is mindful that:

The purpose of the above Rule is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed.
The test to be applied is: Whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally

---

[137] 18 Pa.C.S. § 2702.
[138] Affidavit of Probable Cause April 30, 2013, pg. 2.

41

charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.[139]

As evidenced by the Affidavit of Probable Cause and police reports of Officer Cooper, neither additional charges nor a different set of events were added to the information. Rather, the offense set forth in the amendment involved the same basic elements and the same factual scenario as specified in the original information. Therefore, the Defendant was fully apprised of the charges at the preliminary hearing as contained in the discovery provided to defense counsel.

It is further observed that,

> If there is no showing of prejudice, amendment of an information to add an additional charge is proper even on the day of trial. Finally, the mere possibility amendment of an information may result in a more severe penalty due to the addition of charges is not, of itself, prejudice.[140]

The Commonwealth's Motion to Amend was granted May 5, 2014, and trial was continued until June 10, 2014. Accordingly, the Defendant had ample notice of the amendment before trial began. The Trial Court was cognizant that the amendment in the grading could result in a more severe penalty if convicted, however, the Court found the amendment appropriate as the Affidavit of Probable Cause supported the elements of 18 Pa.C.S. § 2702(a)(1). Moreover, the Pennsylvania Superior Court in *Commonwealth v. Roser*, 914 A.2d 447 (Pa.Super. 2006), reasoned, "our courts apply the rule with an eye toward its underlying purposes and with a commitment to do justice rather than be bound by a literal or narrow reading of the procedural rules."[141]

---

[139] *Commonwealth v. J.F.*, 800 A.2d 942, 945 (Pa.Super.2002); quoting: *Commonwealth v. Davalos*, 779 A.2d 1190, 1194 (Pa.Super.2001).

[140] *Commonwealth v. Picchianti*, 600 A.2d 597, 599 (Pa. Super.1991); *citing: Commonwealth v. Womack*, 453 A.2d 642 (Pa.Super.1982); *Commonwealth v. Lawton*, 414 A.2d 658 (Pa.Super.1979); *Commonwealth v. Jones*, 466 A.2d 691 (Pa.Super.1983).

[141] *Commonwealth v. Roser*, 914 A.2d 447, 453 (Pa.Super. 2006); *quoting: Commonwealth v. Grekis*, 601 A.2d 1284, 1288 (Pa.Super. 1992).

The Defendant was fully apprised of the charges as the information as amended does not charge an additional or different offense and would not alter the Defendant's defense. Thus, the Trial Court discerned no prejudice to the Defendant as a result of the amendment in grading and the Trial Court acted with proper discretion and well within the boundaries of its role.

For the reasons set forth above, the Trial Court respectfully submits that the verdict of the jury should be upheld, and that the Judgment of Sentence should be affirmed.


DATE:                                   BY THE COURT:

7|15|15                                 _____, J.
                                        John F. DiSalle

43